(118 App. Div. 855)

SWIFT v. UNITED STATES REGULATION FIREARMS CO.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

·CONTRACTS—PERFORMANCE—PROOF—SUFFICIENCY.

In an action for commissions on sums obtained by defendant from the federal government for infringement of his patents, plaintiff testified that a verbal contract employing him to procure the passage of a congressional act compensating defendant was made in 1879, and that in 1881 a written contract covering the subject, but limiting the employment to a particular Congress, was made. Plaintiff did not secure the passage of any congressional act, but later a third person employed by defendant procured the passage of an act compensating him. *Held*, that plaintiff as a matter of law had not earned commissions, conceding that the contract of employment was valid.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1207.]

Appeal from Trial Term, New York County. ·

Action by Charles N. Swift against the United States Regulation Firearms Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals.· Judgment and order reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, SCOTT, HOUGHTON, and LAMBERT, JJ.

Hamilton R. Squier, for appellant.
Edward A. Alexander, for respondent.

SCOTT, J. Plaintiff sues upon two causes of action: (1) Upon a verbal contract, said to have been made in 1879, whereby he agreed "to employ his efforts and best endeavors in a lawful manner to have the Congress of the United States pass an act making an appropriation for the defendant for damages which it had sustained by reason of the United States infringing certain patents which were owned or controlled by defendant, and that defendant agreed, in consideration of plaintiff's aforesaid agreement, to pay and allow to plaintiff 20 per cent. of any and all sums obtained from the government of the United States pursuant to any act of Congress which the plaintiff would law-

fully procure to be passed, or which would be passed through his efforts in urging the defendant's claim as aforesaid." He further alleges that he performed the contract on his part and that in or about the year 1902, through the lawful efforts and endeavors of the plaintiff, Congress appropriated $25,000, which was paid to defendant. (2) Upon a quantum meruit for services performed and moneys expended at request of defendant from January 1, 1878, to the year 1901; the service being valued at $4,150, and the disbursements fixed at $3,300.

It is a little difficult to understand all that this second cause of action is intended to cover. It appears to include the services contemplated by the contract set up in the first cause of action and some disbursements incurred in various other matters. It is not very important, however, because all the items, or nearly so, are barred by the statute of limitations, which defendant pleads, and no competent proof was offered as to any of them. The court did, however, instruct the jury that they might allow plaintiff $1,800 for disbursements, in addition to 20 per cent. of the amount collected from the government; and this they did allow, although it is quite impossible to ascertain from the evidence how this $1,800 was arrived at. The plaintiff testified that the verbal contract set out in the complaint was made in behalf of defendant in 1879 by a Mr. Compton, who plaintiff at first says was then president of the company, although the fact is that he was then secretary, becoming president later. He says that this was the only contract he had and upon which he now claims, and that Compton, after he became president, renewed, or rather recognized, it from time to time.

On the trial the plaintiff amplified his statement of the contract somewhat by testifying that Compton agreed to pay him, not only 20 per cent. of the amount collected, but also his expenses. The plaintiff's testimony on this subject is very confused, and in one place he apparently says that the agreement was to pay him $25 a week for expenses while he was in Washington, and that that was paid him. He testified positively that this same contract was in force all the time he was in Washington; but it was shown that in 1881 a written contract was made, covering the subject between defendant on the one hand, and plaintiff and one Hanning on the other, which was limited to the Forty-Eighth Congress, and provided for a payment of 25 per cent. of the amount allowed by Congress, or by the Court of Claims under an act to be passed by Congress. Under this contract plaintiff and Hanning were, at their own expense, to use every fair and legal means towards obtaining the passage of a bill for the relief of defendant, with the understanding that, if the bill failed at the Forty-Eighth Congress, the agreement was to be void.

In point of fact plaintiff never secured the passage of a bill. He went to Washington to promote its passage pretty regularly until 1883. He did nothing between 1883 and 1897, except that he went to Washington two or three times "on his own hook," as he expressed it, and after 1897 apparently ceased his efforts. Later the defendant employed a Mr. Creecy, of Washington, through whose efforts a bill was put through and the money collected. Plaintiff had nothing to do with Creecy, except that he says that he advised his employment

by defendant. It is perfectly clear upon his own story that plaintiff should not have been allowed to go to the jury—much less should a verdict in his favor have been allowed to stand. Upon his own story his right to compensation was dependent upon his success, and he never succeeded. Having arrived at this conclusion, it is unnecessary to consider the question suggested by defendant as to the validity of the contract.

The judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.